# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM GRACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11CV81 LMB |
| | ) | |
| MICHAEL HAKALA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are twenty-eight motions filed by plaintiff, as well as two motions filed by defendants and various response briefs and memoranda. Of the thirty (30) motions currently before the Court, almost all relate to the discovery process, with the exception of three motions for appointment of counsel filed by plaintiff [Doc. #124, #144 and #145], several motions for injunctive relief filed by plaintiff [Doc. #120, #160 and #187], several motions to add parties filed by plaintiff [Doc. #134, #143, #183 and #185], plaintiff's motions for additional access to the law library [Doc. #153, #164 and #165] and a motion for leave to file a sur-reply filed by defendants [Doc. #177]. Additionally, there were several motions to supplement, notices, affidavits, letters, correspondence, exhibits, etc., improperly filed by plaintiff also before the Court that will be addressed and stricken from the record. The Court will discuss the myriad of filings in turn.

## Background

Plaintiff, an inmate at Southeast Correctional Center ("SECC"), seeks relief pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA")[1]. In his second amended complaint [Doc. #36], plaintiff alleged that defendants, and Correctional Medical Services ("CMS") employees, Michael Hakala, John Matthews, Amanda Gibson, Terry Mitchell, Kimberly Sterling, Pamela Lacey[2], Ruth Taylor, Lynette Williams and Stephanie Novak acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

Specifically, plaintiff alleged that he is HIV positive, a recognized disability under the ADA, and that on several specific occasions, he has been denied medication by defendant nurses Gibson, Mitchell, Sterling, Lacey, and Williams.

Plaintiff further alleged that defendants Taylor and Novak, supervisory nurses employed by CMS, acted with deliberate indifference to his serious medical needs

---

[1]Plaintiff may additionally be alleging a claim for discrimination under the Rehabilitation Act for denial of proper medical care.

[2]Plaintiff identified this defendant as "Lacey Derrickson" in his second amended complaint.  Plaintiff has since clarified the record, indicating that the correct name of this defendant is "Pamela Lacey." [Doc. #121]

when they failed to properly supervise the nurse defendants in their administration of the medications once they knew that plaintiff was not receiving his medications.

Plaintiff also claimed generally that defendants Gibson, Mitchell, Lacey, Sterling, Hakala and Matthews violated his rights under the ADA and § 1983 when they failed to provide him with the proper treatment for his HIV.  He also appeared to assert in his complaint that defendants acted in a retaliatory manner in denying him the proper treatment after he filed grievances related to their purported deliberate indifference.

The Court reviewed plaintiff's second amended complaint pursuant to 28 U.S.C. § 1915 and ordered the Clerk to effectuate process on the aforementioned claims and defendants.  As such, these are the claims currently before the Court.

## Discussion

**1.    Plaintiff's Motions to Compel Discovery [Doc. # 102[3], 103, #104, #105, #106, #107, #133, #168 and #186], Plaintiff's Motions for Depositions [Doc. #154][4] and Defendants' Motion for Protective Order [Doc. #173]**

Five of plaintiff's motions to compel are directed to five of the individual defendants: Mitchell, Mathews, Sterling, Gibson and Lacey. [Doc. #103-107] These motions do not, in fact, appear to be actual motions to compel, but rather seem to be service copies of plaintiff's interrogatories which were filed on these defendants. Similarly, Docket #133 appears to be a service copy of plaintiff's request for production, directed at defendants.  As the Court does not require, or desire, service copies of discovery, these motions to compel will be denied without prejudice.

In Docket #154 plaintiff requests an order from this Court allowing him to take the depositions of the defendants who are still working at SECC.  Plaintiff has

_____

[3]Docket #102 is a "motion to complain," wherein plaintiff states that he does not agree with the legal practice of allowing a lawyer to sign documents on behalf of a client.  Under the Missouri Bar and this Court's Bar, a lawyer is an officer of the Court and is required to act in an ethical and upstanding manner at all times.  As a party's representative, he or she is allowed to sign documents on behalf of their client(s).  Although plaintiff may disagree with the practice, his motion to complain is without basis and will be denied.

[4]"Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Castro v. United States, 540 U.S. 786, 791–92 (2003).

not stated which defendants he wishes to depose, what topics he wishes to depose defendants on, or how he believes he will be able to pay for the costs associated with the depositions (i.e, court reporter and transcript fees).  As such, the Court will deny plaintiff's motion without prejudice until such time as he is able to articulate this information to the Court.

In Docket #168 and #186 plaintiff seeks to compel answers to "handwritten depositions" served on defendants on April 16, 2012.  Plaintiff also seeks an order from this Court requiring defendants to produce certain documents he requested in discovery, including time sheets from 2008 through 2012.  In response, defendant seeks a protective order from this Court [Doc. #173], basically seeking leave to treat plaintiff's request for handwritten depositions as interrogatories, pursuant to Fed.R.Civ.P. 33, rather than Fed.R.Civ.P. 31.  Because plaintiff failed to comply with the instructions set forth in Rule 31 when he propounded his "written deposition" requests on defendants, the Court agrees that it is appropriate to treat plaintiff's requests as interrogatories under Rule 33.[5]  As such, plaintiff's motions to compel will be denied without prejudice, defendants' motion for protective order

---

[5]Plaintiff has responded to defendant's argument by requesting that the Court provide him with a court reporter at no cost, so that he can fulfill the requirements of Rule 31.  As set forth in more detail below, the Court has no obligation to do so and will deny his request.

will be granted and defendants will be given thirty (30) days from the date of this Memorandum and Order to respond to plaintiff's requests.

For future reference, however, the Court will instruct plaintiff as to the proper procedure he needs to undertake prior to bringing a motion to compel before this Court relating to a discovery matter.

The Federal Rules of Civil Procedure authorize a motion to compel in Rules 37(a)(1) and (a)(3), and Rule 45(c)(2)(B)(i).

Rule 37 Motion to Compel

A motion to compel can be properly filed under Rule 37 only if:

(1) a deponent fails to answer a question asked under Rule 30 or 31;

(2) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(3) a party fails to answer an interrogatory submitted under Rule 33; or

(4) a party fails to respond that inspection will be permitted, or fails to permit inspection, as requested under Rule 34.

See Rule 37(a)(3)(B), Fed. R. Civ. P.

In order to ascertain whether or not plaintiff can bring a motion to compel under Rule 37, he must deduce whether one of these triggering events have occurred.  And he must also keep in mind that Rule 37's motion to compel

provisions apply only to failure to produce documents by parties to an action.

Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1341 (8th Cir. 1975). "The

purpose of Rule 37 is to provide the mechanism by which Rules 26 to 36 can be

made effective . . . .  It is of limited application when applied to non-parties.  It can

only be used to order a non-party to answer written and oral questions under Rules

30 and 31.  It has no application to a non-party's refusal to produce documents." Id.

(internal citation omitted); see Fed. R. Civ. P. 37(a)(3)(b)(i).  Plaintiff therefore

cannot file a motion to compel under Rule 37, based on a nonparty's failure to

produce documents.

Rule 45 Motion to Compel

Rule 34(c), Fed. R. Civ. P., provides that a nonparty to an action may be

compelled to produce documents in accordance with Rule 45.  Production of

documents from a nonparty "can be compelled only by a subpoena duces tecum

issued under Rule 45(d)(1)." Fisher, 526 F.2d at 1341  (citations omitted).  Thus, if

plaintiff seeks to obtain documents from nonparties, he must comply with the

provisions of Rule 45.

Rule 45(c)(2)(B)(i) provides that if a person or entity directed to produce

documents pursuant to a Rule 45 subpoena files a written objection, "the serving

party may move the issuing court for an order compelling production or inspection."

<u>Requirement of Good Faith Effort to Resolve</u>

Any motion plaintiff files relating to discovery or disclosure, such as a motion to compel, must comply with Local Rule 3.04(A) and Rule 37(a)(1), Fed.R.Civ.P.[3] These rules require that a discovery or disclosure-related motion include a statement of a good-faith attempt to resolve the discovery dispute prior to the filing of the motion.  The Court feels compelled to point out that in the plethora of complaints and motions that plaintiff has filed before the Court, not one of his documents contains such a statement.

Although plaintiff is incarcerated, he must correspond with opposing counsel with respect to any discovery or disclosure dispute prior to filing a motion to compel or other motion relating to discovery or disclosure. Plaintiff must then describe the nature of that correspondence in the discovery motion, as required by Local Rule

---

[3]Local Rule 3.04(A) states:

The Court will not consider any motion relating to discovery and disclosure unless it contains a statement that movant's counsel has conferred in person or by telephone with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere efforts to resolve their dispute, counsel are unable to reach an accord. This statement also shall recite the date, time and manner of such conference, and the names of the individuals participating therein, or shall state with specificity the efforts made to confer with opposing counsel.

3.04(A).  See Faretta v. California, 422 U.S. 806, 934–35 n. 46 (1975) (pro se

litigant must comply with relevant rules of procedure).  Plaintiff is warned that any

future discovery-related motion plaintiff files that does not contain such a statement

will be summarily denied.

**2.      Plaintiff's Motion for Physical Examination [Doc. #109 and #151]**

Plaintiff moves for appointment of an expert to evaluate his medical

condition.[4]  Plaintiff does not indicate under what rule he proceeds, but the court

assumes it is Fed.R.Civ.P. 35.  Rule 35, however, does not vest the court with

authority to appoint an expert to examine a party wishing an examination of himself.

Instead, under appropriate circumstances, it allows the court to order a party to

submit to a physical examination at the request of an opposing party.  See, e.g.,

Lindsay v. Lewis, No. 1:11CV67, 2012 WL 1155744, *1-2 (M.D.N.C. April 6,

20120); Paiva v. Bansal, No. 10-179S, 2011 WL 1595425, *1 (D.R.I. April 27,

2011). Additionally, plaintiff does not indicate who will bear the cost for the

proposed examinations. Regardless, no civil litigant, even an indigent one, has a

legal right to such aid.  Smith v. Carroll, 602 F.Supp.2d 521, 526 (D.Del. 2009);

---

[4]It is interesting that plaintiff seeks an outside medical opinion because he has
been told by defendants that his CD4 counts have improved, and he has been given
copies of the lab results showing the improvements.  Plaintiff asserts that he believes
that the "computers are lying," thus he seeks an outside expert to show the "real"
CD4 counts.

accord, e.g., Brown v. United States, 74 Fed.Appx. 611, 614-15 (7th Cir.2003)

("[The plaintiff] seeks to compel the government to bear the cost of and

responsibility for hiring an expert witness to testify on his behalf.... [N]o civil

litigant, even an indigent one, has a legal right to such aid."); Pedraza v. Jones, 71

F.3d 194, 196 (5th Cir.1995) ("The plain language of [28 U.S.C. § ] 1915 does not

provide for the appointment of expert witnesses to aid an indigent litigant."); Boring

v. Kozakiewicz, 833 F.2d 468, 474 (8th Cir.1987) ( "Although plaintiffs complained

that the district court wrongfully refused to pay for an expert medical witness, they

fail to point to any legislative provision for such funds. Congress has authorized the

courts to waive prepayment of such items as filing fees and transcripts if a party

qualifies to proceed in forma pauperis. However, we have been directed to no

statutory authority nor to any appropriation to which the courts may look for

payment of expert witness fees in civil suits for damages."); Paiva, 2011 WL

1595425, at *2 ("[A]lthough Plaintiff is proceeding in forma pauperis, he may not

use Rule 35 to obtain an expert medical witness at the Court's expense."); James v.

Scarborough, No. 1:10–2794–HMH–SVH, 2011 WL 5508821, at *1 (D.S.C.

Nov.10, 2011) ( "Although Plaintiff has been granted in forma pauperis status, it is

well-settled that a grant of such status does not mean that an 'in forma pauperis

plaintiff's discovery or other court costs either are underwritten or are waived .'")

(quoting <u>Badman v. Stark</u>, 139 F.R.D. 601, 604 (M.D.Pa.1991); <u>Holloway v. Lott</u>, No. 4:08–cv–00821–GTE, 2009 WL 2778665, *1 (E.D.Ark. Aug.28, 2009) ("[N]either 28 U.S.C. § 1915 nor Rule 35 of the Federal Rules of Civil Procedure authorizes courts to pay for tests, consultation, or examination by private physicians.").  For the aforementioned reasons, the court will deny the motion for appointment of an expert/outside physical examination.

**3.      Plaintiff's Motion for Issuance of Subpoenas [Doc. #119, #125 and #130]**

Plaintiff has submitted requests for two types of subpoenas - he seeks production of documents from nonparties pursuant to a subpoena duces tecum and he is also seeking testimony from nonparties under the Court's subpoena power. The Court will address plaintiff's requests for documents first.

Plaintiff seeks an order from this Court directing the U.S. Marshal to serve a subpoena duces tecum on an inmate at Southeast Correctional Center, Mr. Winston Bell-Bey. [Doc. #135]  As stated above, a party may only obtain production of documents from nonparties by using a subpoena duces tecum under Rule 45. <u>Fisher</u>, 526 F.2d at 1341.  Plaintiff has not described the purported documents that he seeks from Mr. Bell-Bey, thus, on this ground alone, plaintiff's motion must be denied.

Plaintiff also seeks a subpoena duces tecum to be issued on Ms. Heather Annesser at Southeast Correctional Center. [Doc. #130] Again, plaintiff has not described the purported documents he seeks from Ms. Annesser, who the Court gathers is a Nurse employed by Correctional Medical Services and stationed at SECC.  Rather, plaintiff has described the events he believes Ms. Annesser witnessed that she can testify to at trial.

From plaintiff's motions/requests for subpoenas duces tecum, it appears that plaintiff does not understand the difference between a request for documents under Rule 45 and a subpoena to require an individual to appear in Court or at a deposition to provide testimony on a party's behalf.  A subpoena duces tecum refers only to a request for documents that an party believes a nonparty has in its possession.  As plaintiff's requests for subpoenas duces tecum do not reference certain documents, the Court cannot grant his requests.

Nevertheless, the Clerk of the Court will be directed to send plaintiff blank subpoena forms.  Plaintiff may fill out the subpoena forms and return them to the Court, along with a Memorandum for Clerk requesting service on nonparties by the U.S. Marshal.  Plaintiff should not sign the subpoenas, as they will be signed by the Clerk after they are returned to and reviewed by the Court.  The subpoena forms

-12-

should be typewritten, if possible, or otherwise must be legible or they will not be considered.

In order for a subpoena duces tecum to be valid and issued by this Court, the Memorandum for Clerk must include the following information for each subpoena: (1) the name of the person or entity plaintiff seeks to serve; (2) the specific documents plaintiff seeks; (3) how the specified documents are relevant to plaintiff's case; and (4) why plaintiff believes the person or entity to be subpoenaed has possession of the documents.

This information is required based on the Court's "discretionary power to refuse to subpoena witnesses and to prevent abuse of its process in both civil and criminal proceedings." Manning v. Lockhart, 623 F.2d 536, 539 (8th Cir. 1980) (per curiam). This power may be exercised to protect the resources of the Court and the U.S. Marshals Service, and to prevent harassment and undue expense of nonparties. See, e.g., Lloyd v. McKendree, 749 F.2d 705, 707 (11th Cir. 1985).

"Courts exercising inherent supervisory power over in forma pauperis subpoenas generally consider factors such as the relevance and materiality of the information requested and the necessity of the particular testimony or documents to proving the indigent's case." Stockdale v. Stockdale, 2009 WL 4030758, at *1 (E.D. Mo. Nov. 18, 2009); see Tuvalu v. Woodford, 2006 WL 3201096, at *5 (E.D.

Cal. Nov. 2, 2006) ("[A] party's ability to use a subpoena duces tecum is circumscribed by the relevance standards of Federal Rule of Civil Procedure 26(b)(1)[.]"); Jackson v. Brinker, 1992 WL 404537, at *7 (S.D. Ind. Dec. 21, 1992) (court may refuse indigent party's request to have U.S. Marshal serve Rule 45 subpoena duces tecum that is "frivolous, requests immaterial or unnecessary information, is unduly burdensome, would be reasonably certain to result in the indigent's responsibility for significant compliance costs for which he cannot provide, or is otherwise unreasonable or abusive of the court's process[.]")

Thus, the Court retains the discretion to refuse to issue Rule 45 subpoenas to nonparties if plaintiff does not provide the required information in the Memorandum for Clerk, or if the Court believes the requests are frivolous or otherwise improper. In the meantime, plaintiff's motions for subpoenas will be denied, without prejudice.

The Court next turns to plaintiff's requests for witness subpoenas. Plaintiff seeks to compel Dr. Gelb Lawrence, an Infectious Disease Doctor at Washington University, to testify on his behalf. [Doc. #119] Plaintiff does not state in his motion whether he seeks Dr. Gelb's testimony at a deposition or at trial.

In Docket #125, plaintiff seeks subpoenas to elicit testimony from J. Kidd, an inmate at Southeast Correctional Center, who purportedly has knowledge of plaintiff being denied medication. He also seeks a subpoena to elicit testimony from

Caseworker Angela Riddell, Caseworker Timothy Seabaugh, Caseworker Donna Wigfall and Office M. Smith, employees Southeast Correctional Center, to bolster his claims that he grieved his failure to receive medication. [Doc. #129]  Again, in his motion for subpoenas, plaintiff has not indicated whether he seeks testimony from these witnesses at deposition or at trial.

First and foremost, the Court must deny the subpoenas because plaintiff has not identified, with specificity, the date, time, place and purpose for the aforementioned witnesses to appear, in compliance with the requirements set forth in Fed.R.Civ.P. 45.  Additionally, the Court will remind plaintiff that he must contact represented parties only through counsel.  As the defendants in this action are all Correctional Medical Services employees, any additional CMS employees that plaintiff wishes to speak with must be contacted through defense counsel.

Moreoever, the Court notes that even if plaintiff requested and was granted deposition subpoenas for any of the aforementioned witnesses, such requests do not provide for payment of witness fees and mileage costs, as well as transcript and/or court reporter costs, provided for under Rule 45.

Although plaintiff has been granted permission to proceed in forma pauperis in this action, this status does not entitle him to disregard the provisions of Rule 45(b) and (c), Fed.R.Civ.P. regarding the pre-payment of witness and mileage fees

and the 100–mile territorial reach of subpoenas for deposition. Section 1915(d),

Title 28, United States Code, governing litigants permitted to proceed in forma

pauperis, states as follows:

> [t]he officers of the court shall issue and serve all process, and perform
> all duties in such cases. Witnesses shall attend as in other cases, and
> the same remedies shall be available as are provided for by law in other
> cases.

Therefore, plaintiff must proceed in accordance with Rule 45, Fed.R.Civ.P.

concerning deposition subpoenas.

Courts construing § 1915(c) have uniformly held that waiver of the

requirement for payment of costs applies only to court costs and that a plaintiff in

forma pauperis must pay witness and mileage fees himself. See Tedder v. Odel, 890

F.2d 210, 211 (9th Cir.1989); United States Marshals Service v. Means, 741 F.2d

1053, 1056 (8th Cir.1984) (en banc); McNeil v. Lowney, 831 F.2d 1368, 1373 (7th

Cir.1987); Gonzalez v. Fenner, 128 F.R.D. 606, 607 (S.D.N.Y.1989); Hodge v.

Prince, 730 F.Supp. 747, 751 (N.D.Tex.1990).


**4.    Plaintiff's Motions to Add Parties [Doc. #134, #143, #183 and #185]**

Plaintiff moves to add parties in four separate motions before this Court.

Plaintiff filed this action, in forma pauperis, on May 5, 2011.  The Court reviewed

plaintiff's original complaint, pursuant to 28 U.S.C. § 1915, on May 19, 2011, and dismissed several claims and defendants.  Plaintiff filed an amended complaint on July 11, 2011, and on August 9, 2011, the Court reviewed the amended complaint pursuant to 28 U.S.C. § 1915 and ordered plaintiff to file a second amended complaint on a court provided form.  Plaintiff filed his second amended complaint on August 22, 2011, and the Court reviewed it, pursuant to 28 U.S.C. § 1915, on October 6, 2011, again dismissing several claims as legally frivolous, or for failure to state a claim, but leaving nine individual defendants in this action.  In that same Memorandum and Order, the Court also dealt with twenty-two motions filed by plaintiff, denying all.

On December 23, 2011, the Court issued a Case Management Order in this case and set the date for the close of discovery as June 22, 2012.  Dispositive motions are due to this Court no later than July 23, 2012.  Thus, significant judicial resources, as well as defense costs have already been undertaken in this case.  In all, as of the date of this Memorandum and Order, the record contains 200 docket entries, the vast majority of which have been filed by plaintiff, himself.

Despite the procedural history in this case, plaintiff seeks to add five additional defendants in this case: Nurse Becky Lizenbee, Caseworker Timothy

Holsten, Caseworker Tracy Mitchell, Nurse Debbie Donoho and Dr. Cleveland
Rayford.

Plaintiff asserts that on November 15 and 16 of 2009, he was denied his HIV
medication by Nurse Becky Lizenbee.  Plaintiff previously named Ms. Lizenbee as a
defendant in his amended complaint and provided these exact same allegations
against Ms. Lizenbee.  However, when plaintiff filed his second amended
complaint, he failed to include any allegations against Ms. Lizenbee in the new
pleading.  Prior to the filing of the second amended complaint, plaintiff was warned
that he should include all of the claims he wished to pursue against all of the
defendants he wished to proceed.  Plaintiff was also specifically told that his second
amended complaint would supercede his amended complaint and render the prior
complaint without legal effect.  Morever, plaintiff has been told on numerous
occasions in this case, that he would not be allowed to amend his pleadings by
interlineation.  Despite all of these cautions, plaintiff chose not to include any
allegations against Ms. Lizenbee in his second amended complaint.  Yet, it wasn't
until March of 2012, or approximately eight months after the filing of the second
amended complaint -  that plaintiff sought leave to add Ms. Lizenbee to his
pleadings - again by interlineation.  Plaintiff has not provided the Court with an
adequate explanation for his dilatory pleading practices, other than to assert that he

-18-

"didn't know" that Ms. Lizenbee was not included in the list of defendants in the second amended complaint.  Even a pro se plaintiff must be master of his own complaint.  Furthermore, plaintiff will not be allowed to amend his pleadings in a piecemeal fashion, as he has been told time and again in this action.  And to allow plaintiff to add additional defendants and alter the discovery process at this late stage in the game would delay this action and cost defendants and this Court time and resources.  As such, the Court will deny plaintiff's motion to add Ms. Lizenbee as a defendant in this action.

Plaintiff seeks leave to add two more defendants to this action, again by interlineation.  Plaintiff claims that on May 25, 2012 he did not receive his HIV medication and he claims that the medication was being passed out by Nurse Debbie Donoho.  He identifies Dr. Cleveland as Nurse Donoho's supervisor and he states that he believes Dr. Cleveland should be held responsible for him not receiving his medication as Nurse Donoho's superior.  For the reasons outlined above, the Court will also deny plaintiff's request to add Nurse Donoho and Dr. Cleveland as defendants in this action.  Plaintiff cannot amend his pleadings by interlineation, as he has been told repeatedly, and to allow him to add two new plaintiffs to this case at this late date would severely prejudice defendants.  Additionally, the Court notes that plaintiff's allegations against Nurse Donoho fail to state a claim upon which

relief can be granted.  Plaintiff does not allege that Nurse Donoho was responsible for failing to give him the medication, he merely states that he didn't receive the medication and that she was one of the nurses who passed out the medication on that date.  Plaintiff's assertions that Nurse Donoho should be held legally responsible for his failure to receive the medication, and that "they is trying to kill plaintiff" are "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements" which fail to state a plausible claim for relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-51 (2009).  Moreover, plaintiff's assertions that Dr. Cleveland should be held liable under a theory of respondeat superior is legally frivolous.  "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983).

Plaintiff seeks to add two additional defendants by interlineation - Caseworkers Tracy Mitchell and Timothy Holsten.  Plaintiff asserts that on February 22, 2012 he was denied his rights to a piece of paper in order to file a handwritten IRR by Mitchell and Holsten.  Again, the Court will deny plaintiff's request for leave to add Mitchell and Holsten as defendants in this action.  As noted above, the Court will not accept amendments by interlineation, plaintiff's time for amending the pleadings has passed, and to allow amendments at this late date would prejudice defendants.  Additionally, plaintiff's proposed amendments fail to state a claim upon which relief may be granted.  "In the context of a state prison system, an inmate grievance procedure is not constitutionally required." Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  "If the state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim." Id.  As such, plaintiff's request to add these two individuals as defendants in this action will be denied, as the claims he has proposed to bring against them would be futile.

**5.     Plaintiff's Motions for Injunctive Relief [Doc. #120, #160 and #187] and Defendants' Motion to File a Sur-Reply to Plaintiff's Motion for Injunctive Relief [Doc. #177][5]**

---

[5]Defendants' motion to file a sur-reply will be granted.

Plaintiff seeks several forms of injunctive relief in several separate motions before the Court.  The Court will address each in turn.

First, plaintiff seeks to require defendants to sign and fill out a medication log, designed by plaintiff, each time he is given or not given his daily medication. [Doc. #120]  "A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits.  Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994).  In his complaint, plaintiff complains that he is not always receiving his HIV medication.  He has not alleged improper recordkeeping or that defendants are not complying with state and federal requirements with regard to healthcare recordkeeping.  Thus, there is no relationship between the injury claimed in plaintiff's motion and the conduct asserted in the complaint. Consequently, plaintiff's motion to require defendants to fill out his home-made medication log will be denied.

In his additional motions for injunctive relief, plaintiff asserts that he has been in "severe pain" in his "lower back, legs and genitals." [Doc. #160 and #187] Plaintiff also states that he has been coughing up blood, he claims he has again lost

weight, he asserts that his CD4 count was under 200 in March of 2009, causing him

to have full-blown AIDS, and he asserts that he has been denied over 600 doses of

his HIV medication.  Plaintiff again seeks an order from this Court requiring

defendants to take him to an outside HIV specialist. [Doc. #160 and #187]

Defendants have responded, in depth, to plaintiff's allegations and request for relief.


To determine whether preliminary injunctive relief is warranted, the Court

must balance the threat of irreparable harm to movant, the potential harm to the

nonmoving party should an injunction issue, the likelihood of success on the merits,

and the public interest.  Dataphase Sys. v. CL Sys., 640 F.2d 109, 113-14 (8th Cir.

1981) (en banc).  "A preliminary injunction is an extraordinary remedy, and the

burden of establishing the propriety of an injunction is on the movant."  Watkins,

Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).  "The party

seeking injunctive relief bears the burden of proving all the Dataphase factors."  Id.

Although plaintiff has offered "exhibits" in support of his motions, he has

offered no current medical records.  In fact, the medical records offered by plaintiff

are dated in various months of 2009, along with two pages of medical records from

September and October of 2011.  Thus, all but two pages of plaintiff's exhibits pre-

date the scope of plaintiff's pleadings.  (The earliest date identified by plaintiff in

-23-

the second amended complaint is March 4, 2010.)  Based on the Court's limited

reading of the records provided, the evidence clearly show a steady improvement in

plaintiff's viral load, measured from the CD4 count, from March of 2010 to

November of 2011.  (Going from approximately 231 to 460.)

Additionally, although plaintiff has alleged he has "lost his appetite" and lost

weight, he has not produced any evidence in support of his claim.  In fact, the

doctor's notes, from Dr. Cleveland Rayford on September 27, 2011, note that

plaintiff does not have "AIDS Wasting Syndrome," an HIV expert was being

consulted, the current lab studies indicate effective anti-viral therapy, that plaintiff's

CD4 count was not declining, his viral load was remaining undetectable, that

plaintiff did NOT have AIDS since he did NOT have a CD4 level of less than 200,

that his condition was stable, his weight was stable, his CD4 had been greater than

200 for more than 6 months, and that he had not taken less than 90% of his HIV

medications[6], that a chest X-ray was being ordered, that pneumonia and flu vaccines

were being given, along with food supplements, and that plaintiff should discontinue

smoking.

---

[6]It appears from the medical records dated September 26, 2011, that at the
time of that examination, plaintiff's compliance with taking medication was 100%.

Although the Court feels some empathy for plaintiff's condition, there is no indication in the evidence provided that he is suffering from immediate irreparable harm or that the remedy plaintiff suggests, an outside HIV specialist, would somehow "fix" what ails plaintiff.  Furthermore, plaintiff's own documents show that he is being treated for the multitude of symptoms his disease produces with many different types of medication and treatment modalities.  Accordingly, plaintiff's request for injunctive relief will be denied.

**6.    Plaintiff's Motions for Additional Access to the Law Library [Doc. #153, #164 and #165]**

In Docket #153 plaintiff complains that he is being "hindered" from using the law library.  He states that he has been told on three occasions after being in the law library and then going to pick up medication and "leaving medical" that he cannot go back to the law library.  Plaintiff claims that he is thereby being forced to "choose" to either go to medical or the law library.  Plaintiff states that this occurred on January 4, 2012 and April 3, 2012.

In Docket #164 and #165, plaintiff states that he was denied "extra" law library time on April 5, 2011, in violation of an SECC rule, and again on May 3, 2012.  Plaintiff says that the rule states that if a prisoner has a court deadline within thirty (30) days of the date the extra library time is requested, he may obtain the

extra time.  Plaintiff says he was denied the time because Ms. Paula Phillips told

him he was not "thirty days short of his court deadline."

Plaintiff's next court deadline is the close of discovery deadline on June 22,

2012 and then the dispositive motion deadline, on July 23, 2012.  Thus, Ms. Phillips

appears to have been correct in her assessment that plaintiff did not qualify for extra

library time under SECC rules when he asked for it at the beginning of April and

May, and the Court refuses to intervene in the prison's rules without good cause for

doing so.

To the extent that plaintiff is attempting to assert access-to-the-courts claims,

his assertions are legally frivolous.  Plaintiff has not shown that he has suffered

"actual prejudice with respect to contemplated or existing litigation."  See Lewis v.

Casey, 518 U.S. 343, 348 (1996).  Accordingly, his motions for additional library

time will be denied.


**7.     Plaintiff's Motion for Appointment of Counsel [Doc. #124, #144 and #145]**

Again asserting he has a "learning disability," plaintiff seeks appointment of

counsel on his behalf.  There is no constitutional or statutory right to appointed

counsel in civil cases.  Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1004

(8th Cir. 1984).  In determining whether to appoint counsel, the Court considers

several factors, including (1) whether the plaintiff has presented non-frivolous

allegations supporting his or her prayer for relief; (2) whether the plaintiff will

substantially benefit from the appointment of counsel; (3) whether there is a need to

further investigate and present the facts related to the plaintiff's allegations; and (4)

whether the factual and legal issues presented by the action are complex.  See

Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986); Nelson, 728 F.2d at

1005.

     After considering these factors, the Court finds that the facts and legal issues

involved are not so complicated that the appointment of counsel is warranted at this

time.  Moreover, despite plaintiff's assertions regarding his learning disability, he

has been able to prepare and file a plethora of documents on his own behalf.  As

such, the Court will deny plaintiff's motions for appointment of counsel.


**8.**     **Documents To Be Stricken From the Record**

     Rule 7 of the Federal Rules of Civil Procedure dictates which pleadings are

allowed before the Court, governs motions and other papers, and identifies the only

pleadings allowed.  It also identifies the basics of motion practice before the Court,

noting that requests for a Court order must be made by motion.  The motion must be

in writing, unless made during a hearing or trial, and it must state with particularity

the grounds for seeking the order and state the relief sought.  Fed.R.Civ.P. 7(b).

With these guidelines in mind, the Court will review the many documents filed by

plaintiff that do not comply with Rule 7 and/or the other Federal Rules of Civil

Procedure or this Court's Local Rules.

Document #131 was filed by plaintiff and appears to be an affidavit of Arthur

Scott, another inmate at SECC.  He appears to be testifying to a nurse telling

plaintiff during a morning medication run that she was out of one of plaintiff's

medication, but that she had the medication in the afternoon.  Document #132 is an

affidavit from plaintiff regarding this same incident.  Both of these affidavits will be

stricken from the record, as there is no indication why these documents were filed

with the Court at this time.

Document #136 is entitled "Plaintiff's Exhibits in Support of His § 1983 Civil

Complaint."  Docket #169, #170, #176, #180, #181 are also supplements to

plaintiff's complaint.  As plaintiff has been told on numerous occasions, he cannot

amend his complaint by interlineation.  Accordingly, these documents will be

stricken from the record.

Document #142 is an affidavit filed by plaintiff stating that he is being denied

grievance materials.  To the extent plaintiff believes he is being denied a

constitutional right he needs to pursue this matter in a separate lawsuit.  He cannot

continue to try to amend his pleadings by interlineation, nor can he continue to contact the Court on an ex parte basis simply to make "complaints" about defendants' behavior.  Thus, this document will be stricken from the record.

Dockets #108, #152, #159, #191 are entitled "Exhibits" and appear to be "evidence" that plaintiff wishes to place before the Court without reference to certain motions or requests.  This is entirely improper and these documents will be stricken from the record.

In Dockets #155, #156, and #158[7] plaintiff moves to supplement the record with information regarding his laboratory tests and CD4 counts.  It is inappropriate for plaintiff to try to place unsubstantiated laboratory evidence before this Court in such a manner.  Plaintiff needs to review the Federal Rules of Evidence prior to the presentation of evidence with any further motions before the Court, including the Best Evidence Rule and the Hearsay Rules.  Plaintiff's motions to supplement the record in this manner will be denied.  These documents will also be stricken from the record.

---

[7]The Court previously granted plaintiff's motion to supplement the record, believing that plaintiff was attempting to brief a specific case before the Court. [Doc. #162] After again reviewing plaintiff's submission, the Court will vacate its prior order and deny plaintiff's motion.  Plaintiff's exhibits, which are not properly before the Court will also be stricken.

Docket #163 is a letter to the Court again in which plaintiff again complains about defendants' responses to his medical problems.  Similarly, Docket #184 is an affidavit in which plaintiff details his daily medical issues and interactions with CMS staff.  This is an inappropriate means by which to communicate with the Court and this correspondence shall be stricken from the record.

Docket #166 appears to be a copy of a "handwritten deposition" and exhibits that plaintiff served on defendant Stephanie Novak.  Docket #179 appears to be plaintiff's objections to defendants' discovery requests directed to plaintiff. The Court does not accept discovery documents for filing.  Accordingly, these documents will be stricken from the record.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions to compel [Doc. #102-#107, #133, #168 and #186] are **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for depositions [Doc. #154] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that defendants' motion for protective order [Doc. #173] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for physical examinations [Doc. #109 and #151] are **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for issuance of subpoenas [Doc. #119, #125 and #130] are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall provide plaintiff with five (5) blank subpoena forms.

**IT IS FURTHER ORDERED** that plaintiff's motions to add parties [Doc. #134, #143, #183 and #185] are **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to file a sur-reply [Doc. #177] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for injunctive relief [Doc. #120, #160 and #187] are **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for additional access to the law library [Doc. #153, #164 and #165] are **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel [Doc. #124, #144 and #145] are **DENIED**.

**IT IS FURTHER ORDERED** that Docket Text Order #162, granting plaintiff leave to supplement the record, is **VACATED**.

**IT IS FURTHER ORDERED** that Docket Numbers #108, #131, #136, #142, #152, #155, #156, #158, #159, #163, #166,#169, #170, #176, #179, #180,

#181, #184 and #191 are **STRICKEN FROM THE RECORD** as improperly

filed.

     Dated this __14th____ day of June, 2012.


_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE