UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:11CV81 LMB |
| ) | |
| MICHAEL HAKALA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff has filed this action under 42 U.S.C. § 1983 against several officials at Southeast Correctional Center ("SECC"), alleging defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c).

This matter is before the court on cross-motions for summary judgment filed by Defendants Michael Hakala, John Matthews, Ruth Taylor, Stephanie Novak, Kimberly Sterling, Amanda Gibson, Lynette Williams, Terrye Mitchell, and Pamela Lacy ("Defendants") (Doc. No. 308), and Plaintiff William Grace (Doc. No. 315). Also pending before the court are the following motions filed by plaintiff: Motions for Default (Docs. No. 329, 360); Motions to Compel (Docs. No. 341, 354); Motion for Preliminary Injunction (Doc. No. 343); Motions for Temporary Restraining Order (Doc. No. 345, 356, 362); Motion for Non-Defendants to Produce Plaintiff's Legal Work (Doc. No. 351); Motion for Ruling on Motion to Compel (Doc. No. 361); Motion and Exhibits in Support (Doc. No. 363); Motion for Ruling on Motion for Summary Judgment (Doc. No. 367); Motions to Appoint Counsel (Docs. No. 368, 375); Motion for

Default Judgment (Doc. No. 369); Motion to Change Venue (Doc. No. 370); Motion for Leave to File Motion for the Production of Documents (Doc. No. 371); Motion for Leave to File Additional Interrogatories (Doc. No. 382); and Motions in Suggestion (Docs. No. 383, 384). Defendants have filed a Motion to Strike Supplemental (Doc. No. 350), and a Motion for Protective Order (Doc. No. 374). All pending motions have been fully briefed.

## **Background**[1]

In his Second Amended Complaint, plaintiff alleges that he was denied his full dosage of HIV/AIDS medications on specific dates and times by Defendants Sterling, Gibson, Williams, Mitchell and Lacy. Plaintiff alleges that Defendants Taylor and Novak failed to respond favorably to the administrative grievances that he filed and failed to keep his medications in stock. Finally, plaintiff alleges that Drs. Hakala and Matthews refused to change his HIV/AIDS medications even though they knew of the medication denials and that his CD4 was dropping, and failed to intervene on his behalf. Plaintiff alleges that defendants' actions resulted in irreparable damage, including shortening his life.

Plaintiff currently resides at SECC where he is incarcerated as an offender and where the claims set forth in his complaint are alleged to have occurred. Plaintiff was diagnosed with HIV/AIDS prior to his incarceration.

Part of plaintiff's care requires that he undergo diagnostic studies from time-to-time to determine the absolute CD4, the CD4% and the viral load. The absolute CD4 is subject to significant fluctuations, while the CD4% fluctuates less. Plaintiff's CD4% has demonstrated a

---

[1]The court's summary of the facts is derived from the statements of undisputed material facts and the evidentiary record submitted by the parties. The court will cite to specific exhibits when necessary.

consistent and gradual overall improvement (higher percentages representing improvement) from March 4, 2010 to December 17, 2012, rising from 15.2% to 27.3%. Plaintiff's viral load, which is a quantitative measurement that reveals the amount of virus detectable in the blood, has demonstrated an improvement (undetectable levels representing an improvement) from March 4, 2010 to December 17, 2012, going from 170 copies/ml of blood to less than 75 copies/ml of blood detectable (which is ideal) as of April 4, 2010, and remaining consistently undetectable through December 17, 2012. An undetectable viral load is the goal of antiviral therapy. Notwithstanding improvements in available therapeutic regimens available for treatment of HIV/AIDS, there is no cure for HIV infection, and some people respond better to the treatments that are available than others. Moreover, a person who responds well to antiretroviral therapy for a period of time has no guarantee that such treatment will continue to be effective for the remainder of that person's life.

Prior to his incarceration with the Missouri Department of Corrections ("MDOC"), plaintiff was jailed at 200 S. Tucker, St. Louis, Missouri, beginning in or around November 2005, during which time his highest viral load was 9,952 copies/ml blood on November 10, 2006, and his absolute CD4 level was measured at a low of 96 on January 12, 2007, with the lowest CD4% being 7% on December 11, 2006. After undergoing treatment by these defendants at SECC, plaintiff's HIV/AIDS laboratory studies have improved, with his overall absolute CD4 level being 196, with a viral load of 170 copies/ml blood on March 4, 2010 (the earliest date of the claims set forth in plaintiff's Second Amended Complaint)and a CD4 level of 579, with an undetectable viral load on January 17, 2013 (the date of the last CD4 and viral load performed prior to the filing of defendants' Motion for Summary Judgment).

Plaintiff first entered the MDOC as an offender in or about December 2007, and was transferred to SECC on July 1, 2008. Upon admission to SECC, plaintiff's absolute CD4 was 230, and his viral load was 3,093 copies/ml blood. An HIV Genotype was ordered on October 14, 2008, the results of which were returned on October 24, 2008. After consulting with the HIV Consultant, Dr. Matthews, plaintiff's physician changed his HIV/AIDS medications on November 12, 2008. March 4, 2010 is the earliest date on which plaintiff alleges complaints against these defendants.

Defendant Hakala is a physician board certified by the American Board of Family Medicine and is licensed to practice medicine in the State of Missouri.

Defendant Matthews is a physician board certified by the American Board of Internal Medicine and by the American Association of HIV Medicine and is licensed to practice medicine in the State of Missouri.[2] Dr. Matthews never had personal contact with or provided direct medical care or treatment to plaintiff.

Plaintiff alleges that Nurse Gibson denied him his Raltegravir on March 29, 2011 at 5:00 p.m., although the medical record created contemporaneously with the event indicates that Nurse Gibson did administer Raltegravir to plaintiff at 5:00 p.m. on March 29, 2011. Plaintiff also alleges that Nurse Gibson denied him his Raltegravir on April 30, 2011, at 5:00 p.m. Nurse Gibson was scheduled to administer plaintiff's Raltegravir at that time but was unable to do so because the Raltegravir was not available to administer, and plaintiff testified that Nurse Gibson did not deliberately withhold his medication.

---

[2]Defendants, in what appears to be a typographical error, attribute Defendant Matthews' credentials to "Defendant Williams." (Doc. No. 311, ¶ 19). Plaintiff accurately notes in his Response that Defendant Williams in an RN. (Doc. No. 322, ¶ 19).

Plaintiff alleges that Nurse Sterling denied him his full dose of medication when he showed up for medication administration at 10:00 a.m. rather than 8:00 a.m. as scheduled. Nurse Sterling declined to administer plaintiff's medication late, and pursuant to policy, deemed his failure to appear at the scheduled time a refusal.

Plaintiff alleges that Nurse Williams did not administer one of his HIV/AIDS medications on April 29, 2011, and one of his HIV/AIDS medications on April 30, 2011, because it was not available to give, and told plaintiff that if it were available that she would give it to him.

Plaintiff alleges that Nurse Lacy was late in administering one of his HIV/AIDS medications on July 14, 2010, and denied him one of his HIV/AIDS medications on May 2, 2011. On July 14, 2010, plaintiff was scheduled to receive his medications at or about 5:00 p.m. and Nurse Lacy administered the medications at 9:45 p.m. because of a corrections lock down which required that Nurse Lacy take the medications to the respective offender housing units to distribute medications because the offenders were not allowed to come to the medical unit during the lock down. The medical record indicates that Nurse Lacy did administer plaintiff his Raltegravir on May 2, 2011 at 8:00 a.m.[3]

Plaintiff alleges that Nurse Mitchell denied him one of his medications on May 22, 2010, and March 25, 2011. The medical record demonstrates that on May 22, 2010, Nurse Mitchell did administer all of plaintiff's HIV/AIDS medications and that on March 25, 2011 she did not

---

[3]Plaintiff disputes this fact and argues that Nurse Lacy's name is not listed on the Medication Administration Record ("MAR"). The MAR, however, reflects a notation of "L" for this date and time, indicating that Nurse Lacy administered his Raltegravir at 8:00 a.m. on May 2, 2011.

administer his Raltegravir at 8:00 a.m. because it had been re-ordered but had not yet arrived at the prison facility so it could not be administered.

Plaintiff alleges that Nurse Taylor, the Director of Nursing, violated his constitutional rights by not responding favorably to his complaints set out in Initial Resolution Requests ("IRR"), the first step in the grievance process. Plaintiff also claims that Defendant Taylor failed to keep HIV/AIDS medication in stock.

Plaintiff alleges that Defendant Novak, the Health Services Administrator at SECC, violated his constitutional rights by not responding favorably to his complaints submitted in the form of grievances, the second step in the grievance process, and by failing to keep HIV/AIDS medication in stock.

Plaintiff testified that he has been told that his CD4 and viral load laboratory results demonstrate that his HIV/AIDS condition is improving. Prior to his incarceration, plaintiff underwent medical treatment at Barnes-Jewish Hospital, among other places. Plaintiff's CD4 and viral load results measured by Barnes-Jewish Hospital prior to his incarceration reveal that his HIV/AIDS improved after his incarceration with the MDOC and further improved from the date of his arrival at SECC to the present.

**I.    Motions for Summary Judgment**

As previously noted, defendants and plaintiff have each filed motions for summary judgment.

### SUMMARY JUDGMENT STANDARD

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

**DISCUSSION**

To establish a constitutional violation based on inadequate medical care, the plaintiff must show that the defendants were deliberately indifferent to a serious medical need. Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d 778, 784 (quoting Camberos v. Branstad, 73 F.3d. 174, 176 (8th Cir. 1995)). See Moore v. Jackson, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.").

In order to satisfy the subjective component of his medical claim, the plaintiff must show that the defendants knew of, yet deliberately disregarded, an excessive risk to the inmate's health. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Logan v. Clarke, 119 F.3d 647, 649 (8th Cir. 1997)). A prison official may be liable if he knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." Coleman, 114 F.3d. at 785 (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (quoting Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)). Moreover, to create an actionable constitutional violation for delay in treatment, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or

the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate." Plemmons v. Roberts, 439 F.3d 818, 823 (8th Cir. 2006). Delay must be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. Whitley v. Albers, 475 U.S. 312, 319 (1986).

Defendants argue in their Motion for Summary Judgment that they are each entitled to summary judgment because plaintiff has failed to provide evidentiary support for his allegations that defendants were deliberately indifferent to his serious medical needs. Defendants contend that plaintiff's allegations amount to mere disagreement with the decisions rendered by Drs. Hakala and Matthews. Defendants argue that Defendants Taylor, Novak, Gibson, Sterling, Williams, Lacy and Mitchell are entitled to summary judgment because plaintiff has failed to demonstrate that the conduct of these defendant nurses amount to deliberate indifference to any serious medical need. Defendants further argue that the claims against Defendants Novak and Taylor amount to no more than respondeat superior claims, and that plaintiff's sworn testimony fails to set forth any claims against Defendants Novak and Taylor whatsoever. Finally, defendants contend that all defendants are entitled to summary judgment as a matter of law because plaintiff has failed to demonstrate the existence of any damage or injury whatsoever.

As an initial matter, the court notes that plaintiff's responses to Defendants' Statement of Uncontroverted Material Facts are deficient and do not comply with Rule 56. Plaintiff's responses consist mostly of either "true" or "false," and do not cite to the record for support. Consequently, the court must deem all of the defendants' facts admitted. Fed. R. Civ. P. 56(e); Local Rule 7-4.01(E); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Hernandez v.

Jarman, 340 F.3d 617, 622 (8th Cir. 2003) (Plaintiff "may not rely on mere denials or allegations"). Plaintiff was required to present material facts supported by citation to the record. Id. In the interests of preserving justice and fairness, however, the court reviewed all evidence provided by both parties including affidavits, depositions, plaintiff's medical records, and plaintiff's exhibits. Pursuant to Federal Rule of Civil Procedure 56(c)(3), the court will take all of this information into consideration.

As to the first element of his Eighth Amendment claim, plaintiff's HIV/AIDS was clearly a serious medical need. See Pool v. Sebastian County, Ark., 418 F.3d 934, 944 (8th Cir. 2005) (a medical need is "objectively serious" if it has been diagnosed by a physician as requiring treatment or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention"). Plaintiff, however, fails to satisfy the second element of his Eighth Amendment claim because the undisputed facts reveal that defendants provided extensive treatment for plaintiff's HIV/AIDS, and plaintiff has provided no evidence suggesting they acted with deliberate indifference towards his serious medical needs.

The Eighth Circuit has clarified that negligence, gross negligence, or a disagreement with the course of medical care does not rise to the level of a constitutional violation. Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006); Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 2001). Instead, to establish deliberate indifference, a detainee must present "proof of a reckless disregard of the known risk." Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998).

**A.     Defendants Hakala and Matthews**

Plaintiff claims that he has demonstrated that defendants were deliberately indifferent to his serious medical needs regarding his HIV. Plaintiff contends that Defendants Hakala and Matthews failed to provide him with adequate treatment to compensate for his missed or delayed doses of HIV/AIDS medication. Plaintiff argues that each downward fluctuation of his CD4 is the result of a deliberate act on the part of defendants to deny or refuse him adequate medical care in violation of his constitutional rights. Plaintiff contends that he has suffered great pain and other injuries as a result of defendant's conduct, including the development of full-blown AIDS and AIDS wasting syndrome.

In his sworn Affidavit, Defendant Hakala states that he recognized plaintiff's HIV diagnosis, conducted a full physical examination, evaluated his vital signs, evaluated his medical record and history, reviewed his laboratory studies and other diagnostic studies, evaluated his drug regimen, made modifications to his drug regimen, ordered diagnostic studies, prepared a plan of treatment, discussed the plan of care with plaintiff, educated plaintiff on the proper use of medications, made lifestyle recommendations, prescribed follow-up evaluation, and evaluated and treated plaintiff's various complaints. (Def's Ex. A). Defendant Matthews states in his Affidavit that he provided indirect medical services and treatment to plaintiff in his capacity as plaintiff's HIV/AIDS consultant. (Def's Ex. B). Defendants Hakala and Matthews state that plaintiff's CD4% and viral load have improved from March 4, 2010 to December 17, 2012. Defendants Hakala and Matthews state that it is normal for a patient with HIV/AIDS to experience fluctuations in their CD4, CD4% and viral load levels while receiving antiretroviral therapy as plaintiff receives. Defendants state that short-term fluctuations in these quantitative blood levels

are not necessarily an indicator that a patient's therapy is improper, less than adequate, or being managed inappropriately and that some patients will show a slow or minimal rise of CD4 count despite a good regimen. Defendants each state that, based on their review of the record and experience as physicians working with offenders within the MDOC, it is their opinion that plaintiff was never denied proper medical treatment for HIV/AIDS or any other condition. Finally, Defendant Hakala states that, in his professional opinion, he does not believe that plaintiff's missed or late doses of medication resulted in a deterioration of his condition.

Contrary to his allegations, plaintiff has failed to come forward with any evidence demonstrating that his HIV was adversely affected or that he was otherwise harmed by defendants' course of care. See Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) (holding that, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993) (explaining that a prisoner's disagreement with a physician's medical judgment or prescribed course of treatment is insufficient to establish deliberate indifference).

Plaintiff contends that he developed full-blown AIDS and AIDS wasting syndrome as a result of defendants' deliberate indifference to his HIV/AIDS. In support of this contention, plaintiff cites to a portion of his medical records. Neither the cited medical records nor any other portion of the record, however, reveals a diagnosis of full blown AIDS or AIDS wasting syndrome. Plaintiff appears to misunderstand his medical records. Plaintiff cites to a pre-written form that includes the term "AIDS Defining Illnesses," under which several conditions considered

to be AIDS defining illnesses are listed, including "AIDS Wasting Syndrome." (P's Ex. 3). The health care provider responds next to each condition with a "yes" or "no," to indicate whether the patient suffers from the condition. The first line after "AIDS Defining Illnesses" states: "None. Move to Section 3." In this case, the health care provider entered "y" to the left of "None," indicating that plaintiff had no AIDS defining illnesses at that time, including AIDS wasting syndrome. The record does not support plaintiff's contention that his condition progressed to full blown AIDS or AIDS wasting syndrome as a result of defendants' treatment. Instead, the record reveals that plaintiff received extensive and thorough evaluation and treatment for his HIV/AIDS as well as his other complaints. Dr. Hakala regularly monitored plaintiff's condition, ordered diagnostic and laboratory studies, and adjusted plaintiff's HIV/AIDS medications as needed. Dr. Hakala consulted with Dr. Matthews, an expert in HIV/AIDS, regarding plaintiff's HIV/AIDS treatment. Dr. Hakala testified that he does not believe that plaintiff's missed or late doses of medication resulted in a deterioration of his condition, and plaintiff has presented no evidence showing otherwise. Plaintiff's own self-serving statements contained in his Affidavit as well as other pleadings filed with the court are insufficient to create a genuine issue of fact for trial. In fact, plaintiff admits that his condition improved after coming under the care of these defendants, as is evidenced by the laboratory data submitted by defendants. Even if plaintiff were able to show that his HIV/AIDS progressed, there is no evidence of a causal connection between an alleged progression and any conduct of defendants. Plaintiff has failed to adduce evidentiary support for his allegations that Defendants Hakala and Matthews were deliberately indifferent to his serious medical needs. Thus, Defendants Hakala and Matthews are entitled to summary judgment.

**B.     Defendants Gibson, Sterling, Williams, Lacy and Mitchell**

Plaintiff alleges that Defendant Nurses Gibson, Sterling, Williams, Lacy and Mitchell violated his constitutional rights when they deliberately refused to properly dispense his HIV/AID medications.

As previously noted, the record refutes plaintiff's claims that his medications were not dispensed by Defendant Gibson on March 29, 2011, by Nurse Lacy on May 2, 2011, and by Nurse Mitchell on May 22, 2010.

On four occasions, Defendants Gibson, Williams, and Mitchell were not able to dispense plaintiff's medication because the medication was not available to administer due to the difficulty of obtaining such medications. Defendants state in their affidavits that, had plaintiff's medication been available, they would have administered it to him. (Def's Exs. E, G).

On March 4, 2010, Nurse Sterling refused to administer plaintiff's medication when plaintiff was scheduled to receive his medications at 8:00 a.m. and he presented at 10:00 a.m. Defendant Sterling stated in an Affidavit that, pursuant to MDOC policy, she declined to administer plaintiff's medication late and deemed plaintiff's failure to timely appear for medication a "refusal" of the medication. (Def's Ex. F).

Finally, Defendant Lacy administered plaintiff's medication late, at 9:45 p.m. instead of the scheduled 5:00 p.m., on July 14, 2010 because of a corrections lock down which required that offenders remain inside their cells. Defendant Lacy stated in her Affidavit that when the facility is locked down, medical staff must pass medications to the offenders in the housing unit rather than the offender appearing at the medical unit, and that this occasionally results in medications being dispensed late. (Def's Ex. H).

As previously discussed, negligence and even gross negligence are insufficient to establish a constitutional violation. Gibson, 433 F.3d at 646. See Dulany, 132 F.3d at 1245 ("A number of individual and isolated incidences of medical malpractice or negligence do not amount to deliberate indifference"). The isolated incidences in which plaintiff did not receive his medication on time due to the unavailability of the medication, a prison lockdown, or plaintiff's own failure to timely appear to receive his medication do not establish deliberate indifference. Plaintiff has presented no evidence of "deliberate inaction amounting to callousness." Bryan, 141 F.3d at 1291. Further, plaintiff has not produced any evidence demonstrating that he was harmed by these few incidences of missing a dosage of medication or receiving his medication late over the course of approximately one year. Thus, Defendants Gibson, Sterling, Williams, Lacy and Mitchell are entitled to summary judgment.

**C.     Defendants Taylor and Novak**

Plaintiff's claims against Defendants Taylor and Novak relate solely to their administrative duties. Plaintiff argues in his Second Amended Complaint that Defendants Taylor and Novak failed to respond favorably to the administrative grievances that he filed regarding the alleged denial of his medications, and failed to keep his medications in stock.

Defendants Taylor and Novak state in Affidavits that the only time medication was not given to plaintiff was on occasions when such medication was not available to a nurse to administer for reasons relating only to the difficulty of obtaining such medications from an outside vendor or because plaintiff failed to follow the rules of the MDOC requiring that offenders appear for medication administration at a specific time period or such will be deemed a medication refusal. (Def's Exs. C, D).

There is no vicarious liability in § 1983 actions. Instead, a supervisor may be held liable only for her personal involvement in the alleged constitutional violation. Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

Plaintiff alleges in his Response to defendants' Motion for Summary Judgment that Defendants Taylor and Novak "condoned" the denial of his HIV medications. Plaintiff has presented no credible evidence in support of this allegation. In fact, plaintiff failed to raise any allegations against these defendants in his deposition. (Def's Ex. I, p. 136-37). Because plaintiff has not offered any factual support for his claims that Defendants Taylor and Novak were personally involved in violating his constitutional rights, Defendants Taylor and Novak are entitled to summary judgment.

## Conclusion

In sum, defendants have demonstrated that they are entitled to judgment as a matter of law. Plaintiff has failed to meet his burden to overcome defendants' Motion for Summary Judgment by coming forward with factual evidence demonstrating that there is a genuine issue for trial. Thus, the court will grant defendants' Motion for Summary Judgment on the claims set forth in plaintiff's Second Amended Complaint. Plaintiff's Motion for Summary Judgment will be denied for the same reasons defendants' motion will be granted.

**II.     Pending Motions**

Plaintiff has filed twenty motions that are currently pending before the court, including motions to compel and other motions relating to the discovery process. Pursuant to the Amended Case Management Order entered in this matter, the deadline for completion of all discovery was October 15, 2012. (Doc. No. 212). Defendants state that plaintiff's motions to compel request

supplemental and duplicative production of documents already provided to plaintiff. (Doc. No. 342). In December 2013, without leave of court, plaintiff served three additional discovery requests on defendants. (Doc. No. 374, Exs. A-C). The court will deny plaintiff's untimely and duplicative motions to compel and requests for discovery.

Plaintiff has also filed motions for default, motions for a temporary restraining order and a preliminary injunction, motions for rulings, motions to appoint counsel, a motion to change venue and motions in suggestion. The court has reviewed these motions and finds them to be without merit.

Defendants have filed a motion to strike supplemental, and a motion for protective order. These motions are moot in light of the court's ruling on defendants' Motion for Summary Judgment.

Thus, all pending motions will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment (Doc. No. 308) be and it is **granted**. A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Summary Judgment (Doc. No. 315) be and it is **denied**.

**IT IS FURTHER ORDERED** that all pending motions be and they are **denied.**

Dated this   26th   day of February, 2014.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE